UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOMIS BASIN EQUINE MEDICAL CENTER, INC. a corporation, | No. 2:21-cv-01404-JAM-KJN |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| SANIFLAME, INC., a corporation; JULES JARC, an individual; ROB FABER, an individual; and DOES 1 through 10, inclusive, | |
| Defendants. | |

Loomis Basin Equine Medical Center, Inc. ("Plaintiff" or "Loomis Basin"), a California corporation, sued Defendants Jules Jarc ("Jarc"), Rob Faber ("Faber") and SaniFlame, Inc. ("SaniFlame"), a Canadian corporation, alleging ten claims involving a breach of contract. See First Amended Complaint ("FAC"), ECF No. 14.

Defendants move to dismiss all claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). See Mot. to Dismiss ("Mot."), ECF No. 17. Plaintiff opposes the motion. See Opp'n, ECF No. 18. Defendants replied. See Reply,

1

1  ECF No. 19.  For the reasons set forth below, the Court DENIES

2  Defendants' motion to dismiss.[1]

3

4                    I.    BACKGROUND

5      Loomis Basin is a full-service hospital and surgery center

6  for horses located in Loomis, California.  FAC ¶¶ 13,17.  In

7  2018, Defendants allegedly solicited Plaintiff to purchase an

8  animal cremation device manufactured by SaniFlame that is known

9  as the SaniFlame 1000 ("the Unit").  Id. ¶¶ 12, 14.  The Unit

10 consists of a primary cremation chamber and a secondary chamber

11 to burn the emissions released during the cremation process.  Id.

12 ¶ 14.  Defendant Faber, one of SaniFlame's agents, allegedly made

13 various representations to Loomis Basin about the quality and

14 ease of use of the Unit, including its suitability for use in

15 California.  Id. ¶¶ 12, 17.

16      Loomis Basin alleges that, on May 6, 2019, Faber came to

17 Loomis Basin's property in Loomis, California to further discuss

18 the Unit's specifications and suitability.  Id. ¶ 17.  Following

19 this meeting, on June 16, 2019, Loomis Basin entered into a sales

20 agreement ("Agreement") with SaniFlame to purchase the Unit for

21 $419,000 (Canadian dollars).  Id. ¶ 19.  Loomis Basin paid a 40%

22 deposit and then made several subsequent payments, which now

23 total $377,100.00 (Canadian dollars) or $292,188.56 (US dollars),

24 about 90 percent of the contract price.  Id. ¶ 19.

25      Plaintiff made modifications to its premises to accommodate

26

27 [1] This motion was determined to be suitable for decision without
   oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28 scheduled for March 15, 2022.

                              2

1    the Unit in anticipation of delivery.  Id. ¶ 16.  Relying on

2    Defendants' representations about the Unit, Plaintiff applied for

3    a permit from Placer County.  Id. ¶ 14.  Defendants allegedly

4    assisted in the permitting process by providing the County

5    information about the Unit.  Id. ¶¶ 14-15.  Loomis Basin received

6    a preliminary permit and began making modifications at its own

7    expense.  Id. ¶ 16.  These accommodations include building

8    infrastructure to support the Unit, modifying a structure to

9    house the Unit, and installing fuel and electrical lines.  Id.

10   ¶ 23.  Work was allegedly performed "as directed by Defendants."

11   Id.

12       The Unit was delivered on December 24, 2019, later than the

13   promised delivery window, which the Agreement specified as 14-16

14   weeks from signing or September 23, 2019 to October 7, 2019.  Id.

15   ¶¶ 21, 24.  The Unit allegedly arrived with "numerous visible

16   defects inconsistent with the specifications Defendants

17   promised," including peeling paint, a defective right metal door

18   that fell off when opened, faulty hinges on the left door,

19   burners different from the ones Defendants specified, and "metal

20   support legs . . . too short to allow the car holding a carcass

21   to go into the Unit."  Id. ¶¶ 24, 25.  Because of these and other

22   problems, the Unit was "nonoperational."  Id. ¶ 26.

23       At Loomis Basin's requests, Defendants allegedly made

24   multiple attempts to repair the Unit but without success.  Id.

25   ¶ 28.  Defendants allegedly stopped responding to Loomis Basin's

26   requests in June 2020, but resumed on November 23, 2020, after

27   being contacted by Loomis Basin's counsel.  Id. ¶ 32.  Loomis

28   Basin alleges that Defendants further attempted to repair the

1  Unit on eight occasions between December 2020 and April 2021,

2  also without success.  Id. ¶ 35.  The Unit remains nonoperational

3  to this day.  Id. ¶ 36.  Loomis Basin brought suit on August 6,

4  2021.  See Compl., ECF No. 1.

5

6                        II.   OPINION

7      A.   Judicial Notice

8      As a preliminary matter, Plaintiff asks the Court to take

9  judicial notice of Plaintiff's FAC, filed January 12, 2022, at

10 ECF No. 14.  See Pl.'s Req. for Judicial Notice at 1, ECF

11 No. 18-2.  While the Court may take judicial notice of matters

12 in the public record, the Court need not take judicial notice of

13 Plaintiff's FAC, because it is the operative pleading in this

14 case.  See Nanavati v. Adecco, 99 F. Supp. 3d 1072, 1075 (N.D.

15 Cal. 2015) ("The Court need not take judicial notice of Exhibit

16 A, which is the operative pleading in this action").

17 Accordingly, the Court denies Plaintiff's request for judicial

18 notice as moot.

19     B.   Personal Jurisdiction

20     Defendants move to dismiss Plaintiff's complaint for lack

21 of personal jurisdiction under Federal Rule of Civil

22 Procedure 12(b)(2).  Mot. at 1.

23          1.   Legal Standard

24     A party may move to dismiss a suit for lack of personal

25 jurisdiction under Rule 12(b)(2).  To defeat a Rule 12(b)(2)

26 motion, the plaintiff must make a prima facie showing of

27 jurisdictional facts sufficient to establish that jurisdiction

28 is proper.  Mavrix Photo, Inc. v. Brand Tech., Inc. 647 F.3d

1   1218, 1223 (9th Cir. 2011).  Here, where there is no applicable

2   federal statute governing personal jurisdiction, the Court

3   applies the law of California.  Id.  Because California's long-

4   arm statute is coextensive with federal due process

5   requirements, the jurisdictional analysis under state law and

6   federal due process are the same.  Id. (citing Cal. Civ. Proc.

7   Code § 410.10).  For this Court to exercise personal

8   jurisdiction consistent with due process, the defendant must

9   have "minimum contacts" with this forum "such that the

10  maintenance of the suit does not offend 'traditional notions of

11  fair play and substantial justice.'"  Int'l Shoe Co. v.

12  Washington, 326 U.S. 310, 316 (1945) (internal citations

13  omitted).  A court may exercise either general or specific

14  jurisdiction over a defendant.  Goodyear Dunlop Tires

15  Operations, S.A. v. Brown, 564 U.S. 915, 919-20 (2011).

16      When parties offer conflicting factual allegations, the

17  matter may be determined by reference to the burden of proof on

18  each party.  Data Disc, Inc. v. Systems Technology Associates,

19  Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  The party seeking to

20  invoke the jurisdiction of the federal court has the burden of

21  establishing that jurisdiction exists.  KVOS, Inc. v. Associated

22  Press, 299 U.S. 269, 278 (1936).  The quantum of proof required

23  to meet that burden varies depending on how the trial court

24  decides to resolve a motion for dismissal.  Data Disc, Inc., 557

25  F.2d at 1285.  If, as here, the court decides to resolve the

26  matter based on written materials and affidavits rather than an

27  evidentiary hearing, "a plaintiff must make only a prima facie

28  showing of jurisdictional facts through the submitted materials

1  in order to avoid a defendant's motion to dismiss."  Martinez v.

2  Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014).  In

3  determining whether a plaintiff met its burden, the Court must

4  take uncontroverted allegations in the complaint as true and

5  "[c]onflicts between parties over statements contained in the

6  affidavits must be resolved in the plaintiff's favor."  Dole

7  Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002).

8  Plaintiff's argument must rest on more than "bare bones'

9  assertions of minimum contacts with the forum or legal

10  conclusions unsupported by specific factual allegations."

11  Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007).

12          2.    General Jurisdiction Analysis

13      A court has general jurisdiction over a party whose

14  "continuous operations within a state [are] so substantial and

15  of such a nature as to justify a suit against it on causes of

16  action arising from dealings entirely distinct from those

17  activities."  Int'l Shoe Co., 326 U.S. at 318.  This is an

18  exacting standard that requires Defendants' activities in

19  California be "so continuous and systematic as to render [it]

20  essentially at home" in the state.  Goodyear Dunlop Tires, 564

21  U.S. at 919.  Generally, a corporate defendant is "at home" in

22  California in three situations: (1) It is incorporated in the

23  state; (2) it has its principal place of business in the state;

24  or (3) it has "continuous and systematic contacts" with the

25  state.  Daimler AG v. Bauman, 571 U.S. 117, 137 (2014).

26      Defendants argue that they are not subject to general

27  jurisdiction in California.  Mot. at 3.  Defendant SaniFlame is

28  neither incorporated nor does it have its principal place of

6

1  business in California.  Mot. at 4; <u>see</u> <u>also</u> Decl. of Jules Jarc

2  ("Jarc") ¶ 5, ECF No. 17-3.  Further, the remaining individual

3  Defendants Jarc and Faber are both domiciled in Canada.  Mot.

4  at 4.; FAC ¶¶ 6-7.  Plaintiff does not respond to Defendants'

5  general jurisdiction argument in its opposition, choosing

6  instead to cabin its response to specific jurisdiction

7  arguments.  Opp'n at 8, 12.  Because Plaintiff does not oppose

8  Defendants' argument that the Court lacks general jurisdiction,

9  Plaintiff waives this argument.  See <u>Resnick v. Hyundai Motor</u>

10 <u>America, Inc.</u>, No. CV 16-00593-BRO (PJWx), 2017 WL 1531192 at

11 *22, (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument

12 raised in a motion to dismiss constitutes waiver of that

13 argument").  Accordingly, the Court does not find general

14 jurisdiction exists over Defendants.

15              3.    Specific Jurisdiction Analysis

16    Specific jurisdiction "depends on an affiliation between

17 the forum and the underlying controversy, principally, activity

18 or an occurrence that takes place in the forum State and is

19 therefore subject to the State's regulation." <u>Goodyear Dunlop</u>

20 <u>Tires</u>, 564 U.S. at 919.  For specific jurisdiction to attach,

21 the relationship between the defendant and the forum "must arise

22 out of contacts that the 'defendant himself' creates with the

23 forum State."  <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1122 (2014)

24 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475

25 (1985)).  The Court's analysis "looks to the defendant's

26 contacts with the forum State itself, not the defendant's

27 contacts with persons who reside there."  <u>Walden</u>, 134 S. Ct. at

28 1122.

1        The Ninth Circuit prescribes a three-prong test for

2   analyzing claims of specific jurisdiction:  (1) The nonresident

3   defendant must purposefully direct its activities or consummate

4   some transaction with the forum or resident thereof; or perform

5   some act by which it purposefully avails itself of the privilege

6   of conducting activities in the forum, thereby invoking the

7   benefits and protections of its laws; (2) the claim must be one

8   which arises out of or relates to the defendant's forum-related

9   activities; (3) the exercise of jurisdiction must comport with

10  fair play and substantial justice such that it is reasonable.

11  See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802

12  (9th Cir. 2004).  The plaintiff bears the burden of satisfying

13  the first two prongs of the test.  Sher v. Johnson, 911 F.2d

14  1357, 1361 (9th Cir. 1990).  If the plaintiff makes a sufficient

15  showing on the first two prongs, the burden shifts to the

16  defendant to prove that jurisdiction would be unreasonable in

17  light of traditional consideration of fair play and substantial

18  justice.  Dole Food Co., 303 F.3d at 1114.

19              a.   Specific Personal Jurisdiction Over Defendant

20                   SaniFlame, Inc.

21       Under the first prong of the specific-jurisdiction inquiry,

22  the Plaintiff must make a prima facie showing that Defendant

23  SaniFlame purposely availed or directed its activities at the

24  forum.  Schwarzenegger, 374 F.3d at 802.  Purposeful availment

25  and direction represent "two distinct concepts," with availment

26  analysis used for suits sounding in contract and direction

27  analysis for suits sounding in torts.  Id.  Here, where a party

28  alleges both tort and contract claims, and the tort claims are

8

1   based on the parties' purported contractual relationship, it is

2   appropriate to utilize the jurisdictional test applied in

3   contract cases.  See Boschetto v. Hansing, 539 F.3d 1011, 1016

4   (9th Cir. 2008) (the purposeful availment test was properly used

5   where plaintiff's claims for violation of the California

6   Consumer Protection Act, breach of contract, misrepresentation,

7   and fraud "sound[ed] primarily in contract").

8       The purposeful availment contract analysis is "a highly

9   realistic approach that recognizes that a contract is ordinarily

10  but an intermediate step serving to tie up prior business

11  negotiations with future consequences, which themselves are the

12  real object of the business transaction."  Burger King, 471 U.S.

13  at 488.  The Supreme Court directs courts to examine four

14  factors: (1) prior negotiations; (2) contemplated future

15  consequences; (3) terms of the contract; and (4) the parties'

16  actual course of dealing.  Id. at 479.  The Ninth Circuit has

17  emphasized "that courts must evaluate the parties' entire course

18  of dealing, not solely the particular contract or tortious

19  conduct giving rise to the claim, when assessing whether a

20  defendant has minimum contacts with a forum."  Global

21  Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma,

22  S.A., 972 F.3d 1101, 1108 (9th Cir. 2020).

23      Taking uncontroverted allegations in Plaintiff's complaint

24  as true, the Court finds that Plaintiff has made a prima facie

25  showing that Defendant SaniFlame "reach[ed] out beyond [Canada]

26  to create continuing relationships and obligations with citizens

27  of [California]."  Burger King, 471 U.S. at 473.  For one,

28  negotiations began only after SaniFlame sent unsolicited emails

1   to Plaintiff's agents about its cremation unit on July 27, 2018.

2   FAC ¶¶ 12, 14; see Decl. of Dr. Christopher Langdon Fielding

3   ("Fielding") ¶ 2, ECF No. 18-1.  Negotiations began on July 30,

4   2018.  Id. ¶ 7.  During negotiations, on May 6, 2019,

5   SaniFlame's agent, Defendant Faber, travelled to Loomis,

6   California "to tour the proposed site where the cremation unit

7   was to be housed," and "discussed the design, specifications,

8   and infrastructure for the proposed cremation unit."  Decl. of

9   Fielding ¶ 11.  Defendant Faber also "spoke with a

10  representative from the Placer County California building permit

11  office regarding the cremation unit's specifications to ensure

12  its compliance with California and Placer County laws and

13  regulations."  Id. ¶ 13.  These facts demonstrate an

14  understanding that the Unit would be delivered to California and

15  installed there according to California regulations.

16       Defendants' visit and efforts culminated in a sales

17  Agreement on June 16, 2019.  Id. ¶ 15.  The terms of the

18  Agreement included a warranty.  Mot. at 6.  Although Defendants

19  insist that a warranty "can be processed remotely from out of

20  state," the uncontroverted allegations show that warranty

21  repairs have all been made in-person at Plaintiff's Loomis

22  facility.  Mot. at 6; Decl. of Fielding ¶¶ 25, 27 (listing at

23  least nine occasions when a technician came out to service the

24  Unit on behalf of SaniFlame.).

25       Defendants make much of the fact it "has only ever sold a

26  single incinerator to a resident of California."  Mot. at 3.

27  Defendants refer repeatedly to its transaction as a "single

28  contract."  Mot. at 1, 4, 6, 8-9.  However, as Plaintiff points

10

1    out, a finding of specific jurisdiction requires a <u>qualitative</u>

2    evaluation of Defendants' contact with the forum state, not a

3    quantitative evaluation.  See <u>Boschetto</u>, 539 F.3d at 1017

4    (emphasis added).  Qualitatively, Plaintiff's uncontested

5    allegations establish that Defendants marketed their product

6    specifically to a California corporation located in California,

7    engaged in extensive negotiations over suitability,

8    specifications, and compliance with California regulations, and

9    were responsible for repairs in California when defects were

10    discovered that rendered the Unit nonoperational.  Opp'n at 10.

11    These facts together demonstrate that "the center of gravity" of

12    the business relationship between Plaintiff and Defendants

13    rested squarely in California.  <u>Global Commodities Trading Grp.,</u>

14    <u>Inc.</u>, 972 F.3d at 1108. Taking into consideration the entire

15    course of dealings between the parties, the Court finds that

16    Defendant SaniFlame purposefully availed itself of the

17    privileges of conducting activities in the forum.

18         Regarding the second prong of the specific-jurisdiction

19    inquiry, the parties do not contest that the claims arise from

20    Defendants' forum-related activities.  See Mot. at 4 ("[T]his

21    entire case arises out of a contract for sale of a good between

22    SaniFlame and Plaintiff"); Opp'n at 5 ("Plaintiff's claims arise

23    from Defendants' sale, design, and (non)operation of the

24    cremation unit").  As such, the Court finds this element is

25    satisfied.

26         Since Plaintiff has made a prima facie showing sufficient

27    to establish the first two prongs, the burden shifts to

28    Defendants to present "a compelling case that the exercise of

1  jurisdiction would not be reasonable."  Burger King, 471 U.S. at

2  478.   The Court considers the following seven factors: "(1) the

3  extent of purposeful interjection; (2) the burden on the

4  defendant to defend the suit in the chosen forum; (3) the extent

5  of conflict with the sovereignty of the defendant's state;

6  (4) the forum state's interest in the dispute; (5) the most

7  efficient forum for judicial resolution of the dispute; (6) the

8  importance of the chosen forum to the plaintiff's interest in

9  convenient and effective relief; and (7) the existence of an

10  alternative forum."  Gray & Co. v. Firstenberg Mach. Co., 913

11  F.2d 758, 761 (9th Cir. 1990).   Defendants argue that personal

12  jurisdiction would be unreasonable based on these factors.  Mot.

13  at 9-10.   The Court disagrees.

14      As to the first factor, the Court finds unpersuasive

15  Defendants' argument that their "purposeful injection into

16  California is extremely minimal."  Mot at 9.   Although

17  Defendants "sold a single product to a single consumer," they

18  also purposefully sought out their customer through unsolicited

19  emails, and they purposefully tailored their product to fit

20  California specifications.  Id.   Neither of these actions

21  support characterizing their injection into California as

22  "extremely minimal."  Id.

23      As to the second factor, the Court acknowledges the burden

24  placed on foreign nationals to defend a suit abroad.  Litigating

25  abroad imposes significant inconveniences upon the party

26  appearing in a foreign country.  See Olsen By Sheldon v. Mexico,

27  729 F.2d 641, 650 (9th Cir. 1984).   However, "[m]odern advances

28  in communications and transportation have significantly reduced

12

1   the burden of litigating in another country." Sinatra v. Nat'l

2   Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988).  This

3   factor weighs in Defendants' favor but does not carry the day.

4        As to the third factor, the Court must consider the

5   seriousness of the potential affront to the sovereignty of the

6   Defendants' state.  "A foreign nation presents a higher

7   sovereignty barrier than that between two states within our

8   union." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1333 (9th

9   Cir. 1984).  Canada has a clear interest in resolving disputes

10  involving its citizens, however, this factor by itself is not

11  dispositive, for, if "given controlling weight, [the sovereignty

12  factor] would always prevent suit against a foreign national in

13  a United States court").  Id.

14       As to the remaining four factors, Defendants have not shown

15  a compelling reason that Canada would be a more interested,

16  effective, or efficient forum for dispute when compared to

17  California, though it is one possible alternative.  Mot at 10

18  (weighing factors four through six as "equal.").

19       When the Court considers all of these factors, only two

20  factors weigh compellingly in favor of Defendants.  The Court

21  concludes that the exercise of personal jurisdiction

22  sufficiently comports with substantial justice and fair play.

23  Accordingly, the Court finds specific jurisdiction appropriate

24  as to Defendant SaniFlame.

25                  b.  Specific Personal Jurisdiction Over Individual

26                      Defendants Jules Jarc and Rob Faber

27       The Court next considers whether it may exercise

28  jurisdiction over individual Defendants Jarc and Faber based on

                                  13

1    their contacts with the forum on behalf of a corporation.  The

2    Supreme Court allows the exercise of specific jurisdiction over

3    employees based on actions they took on behalf of a corporation.

4    See Calder v. Jones, 465 U.S. 783, 790 (1984) ("[T]heir status

5    as employees does not somehow insulate them from jurisdiction").

6    Personal jurisdiction over an individual who acts as an agent of

7    a third party must be assessed on the individual's actions

8    alone.  Sher, 911 F.2d at 1366; see also Keeton v. Hustler

9    Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction

10   over an employee does not automatically follow from jurisdiction

11   over the corporation which employs him.").  Plaintiff's

12   uncontested factual allegations show that Defendants Jarc and

13   Faber's were an integral part of the negotiation and follow-up

14   on the contract that gives rise to this suit, enough to

15   establish minimum contacts sufficient for personal jurisdiction

16   to attach.  The relevant allegations are as follows.

17        Defendant Faber sent multiple unsolicited emails

18   advertising SaniFlame's cremation product.  Decl. of Jarc ¶ 6;

19   Decl. of Fielding ¶¶ 4,10.  He visited Plaintiff in California

20   to discuss the suitability of the Unit for use at Plaintiff's

21   California location.  Decl. of Fielding ¶ 11.  He made multiple

22   representations that worked to secure the sale, including the

23   assertion that he was "100% positive [their] unit will surpass

24   all California Air [sic] regulations."  Id. ¶ 8.  He also worked

25   with the local planning department so Plaintiff could obtain a

26   conditional permit to modify its premises to accommodate the

27   Unit.  Id. ¶¶ 13,17-18.  He continued to be a point of contact

28   after the Agreement was signed to discuss "delivery dates,

14

1  installation of the unit, power requirements, gas requirements,

2  and additional work needed to be completed prior to delivery of

3  the cremation unit." Id. ¶ 17.  When the Unit was delivered, he

4  visited Loomis, California on two separate occasions to assist

5  with installation.  Id. ¶ 21.

6       Defendant Jarc, though not as involved as Faber, also

7  participated in the negotiation and follow through of the

8  Agreement.  He was in e-mail contact with the Plaintiff for

9  months leading up to the Agreement "regarding the sale,

10 operation, design, construction, operation, and manufacturing of

11 the cremation unit." Id. ¶ 9.  Critically, Plaintiff's

12 uncontroverted declaration specifies that "I was advised on

13 multiple occasions by Jules Jarc that he specifically designed

14 the SaniFlame, Inc., [sic] cremation unit for Loomis Basin to

15 comply with California's regulations.  These specifications and

16 modifications were required to meet the unique needs of Loomis

17 Basin located in California.  Accordingly, I, on behalf of

18 Loomis Basin, entered into a sales agreement with SaniFlame,

19 Inc., on June 16, 2019." Id. ¶¶ 14-15 (emphasis added).  Jarc

20 then continued to be a point of contact for Plaintiff and

21 visited Loomis, California to assist with installation on two

22 separate occasions.  Id. ¶¶ 17,21.

23      At this stage in the proceedings, when deciding whether

24 personal jurisdiction applies, the Court must accept Plaintiff's

25 uncontroverted allegations as true.  Dole Food Co., 303 F.3d at

26 1108.  Although Defendants submitted declarations by Jarc and

27 Faber, their allegations do not contradict the allegations,

28 referenced above, set forth in Plaintiff's declaration.  Based

                                    15

1  on Plaintiff's allegations, therefore, Defendants Jarc and Faber

2  made representations to Plaintiff about the specifications of

3  the Unit and its suitability for California use.  They also made

4  representations about the accommodations that would be needed to

5  install the Unit, in reliance upon which Plaintiff made changes

6  to its premises at its own expense.  They both visited

7  Plaintiff's premises on at least two occasions to assist with

8  installing the Unit.  They both remained in contact with

9  Plaintiff after the Unit was installed to coordinate repair

10  efforts, unsuccessful though they were.  Decl. of Fielding

11  ¶¶ 24-25.  As such, the Court finds that Jarc and Faber's

12  individual actions were integral to the controversy at issue and

13  sufficient for them to have "reasonably foreseen" that they

14  would be subject to jurisdiction in California's courts if their

15  actions caused harm here.  Davis v. Metro Productions, Inc., 885

16  F.2d 515, 523 (9th Cir. 1989).  Accordingly, the Court concludes

17  it may exercise personal jurisdiction over individual Defendants

18  Jarc and Faber.

19

20                          III.   ORDER

21      For the reasons set forth above, the Court DENIES

22  Defendants' Motion to Dismiss.

23      IT IS SO ORDERED.

24  Dated: May 13, 2022

25

26                          JOHN A. MENDEZ,
                            UNITED STATES DISTRICT JUDGE

27

28

                                16