UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOMIS BASIN EQUINE MEDICAL CENTER, INC.,<br>Plaintiff,<br>v.<br>ROB FABER,<br>Defendant. | Case No. 2:21-cv-01404-JAM-CSK<br><br>FINDINGS & RECOMMENDATIONS RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 63) |

Pending before the Court is Plaintiff Loomis Basin Equine Medical Center, Inc.'s partial motion for summary judgment against Defendant Rob Faber.[1] (ECF No. 63.) Defendant failed to respond to the motion. (*See* Docket.) Pursuant to Local Rule 230(g), the Court submitted the motion upon the record and briefs on file.

For the reasons that follow, the Court recommends granting in part and denying in part Plaintiff's partial motion for summary judgment.

/ / /

/ / /

/ / /

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c).

# I. BACKGROUND

## A. Factual Allegations

Plaintiff alleges the following. Plaintiff is a full-service hospital and surgery center for horses. First Amended Complaint ("FAC") ¶ 13 (ECF No. 14); UDF 1. Plaintiff intended to purchase an incinerator to provide large animal cremations to its clients. FAC ¶ 13. In 2018, Defendants SaniFlame, Inc. and Rob Faber solicited Plaintiff to purchase an animal cremation device (hereinafter "the Unit"). *Id*. at ¶ 12. The incinerator was sold as "easy to operate" with "no maintenance." *Id*. In December 2018, Plaintiff applied for a permit from Placer County, which Defendant assisted with, and was issued a preliminary permit. *Id*. at ¶¶ 14-15.

On or about May 6, 2019, Defendant Faber traveled to Plaintiff's property to discuss the Unit with Plaintiff's representative, Dr. Langdon Fielding. *Id*. at ¶ 17. Dr. Fielding and Defendant Faber discussed the Unit's specifications and suitability for Plaintiff's intended use. *Id.* Plaintiff also alleges Defendant Faber represented that the Unit would be both easy to operate and cremate horses without expelling odors. *Id*. at ¶ 18.

On June 16, 2019, Plaintiff entered into a sales agreement with Defendant SaniFlame, Inc. to purchase the Unit for $419,000 Canadian dollars. *Id*. at ¶ 19. I exchange for a mutually agreed-upon schedule of payments, Defendants agreed to deliver and install the Unit. *Id*. at ¶ 20.

Plaintiff's agreement with Defendants called for delivery between September 23, 2019 and October 7, 2019. *Id*. at ¶ 21. Plaintiff alleges that delivery was delayed "multiple times" and resulted in additional installation expenses. *Id*. at ¶ 22.

On December 24, 2019, Defendants delivered the Unit. *Id*. at ¶ 24. Plaintiff alleges that the Unit came with "numerous visible defects." *Id.* Plaintiff also alleges that the Unit came with burners different than what Defendants specified and alleges that upon startup, the Unit was "nonoperational." *Id*. at ¶¶ 25-26.

In the months following the delivery of the Unit, Plaintiff sought assistance from

Defendants to make repairs on many defects, including intermittent shutdowns, leakage of fluids from carcasses in the cremation car, and complications due to intermittent shutdowns, including odors from partially burnt carcasses. *Id*. at ¶ 27. Plaintiff alleges that these complications resulted in lost revenue. *Id*. at ¶ 29. Defendants attempted to make multiple repairs several times between the date of delivery and April 1, 2021, but the unit remains nonoperational. *Id*. at ¶¶ 28, 31-35.

**B. Procedural Posture**

On August 6, 2021, Plaintiff Loomis Basin Equine Medical Center, Inc. initiated this action by filing a Complaint against Defendants SaniFlame, Inc., Jules Jarc, and Rob Faber. (ECF No. 1.) On January 12, 2022, Plaintiff filed a First Amended Complaint. (ECF No. 14.) On May 27, 2022, counsel for all Defendants filed a motion to withdraw. (ECF No. 26.) On June 10, 2022, all Defendants filed an answer through counsel. (ECF No. 30.) On July 22, 2022, the Court granted all Defendants' counsel's motion to withdraw and stayed the matter for thirty (30) days from the date of the order for all Defendants to find replacement counsel. (ECF No. 34.) On April 1, 2024, the Court issued an order granting judgment against Defendant SaniFlame, Inc. (ECF Nos. 37, 38.) On April 18, 2025, the Court issued an order directing the Clerk of the Court to reassign this action as pro se and referred this matter to the undersigned. (ECF No. 43.)

On May 9, 2025, Plaintiff filed a request for voluntary dismissal of Defendant Jarc, who Plaintiff believed had passed away since filing the answer. (ECF No. 45.) The Court granted Plaintiff's request on May 15, 2025. (ECF No. 47.) Following the dismissal of Defendant Jarc, only Defendant Faber remained in the action. *See* Docket.

On May 20, 2025, the parties held an initial scheduling conference, where counsel Blaze Van Dine appeared for Plaintiff and Defendant Faber, now pro se, appeared telephonically. (ECF No. 48.) On May 29, 2025, the Court signed a pretrial scheduling order, that, among other things, required initial disclosures to be served by June 21, 2025. (ECF No. 51.)

On July 24, 2025, pursuant to the parties' joint request, the Court set an informal

telephonic discovery conference for July 30, 2025. (ECF No. 52.) Plaintiff argued that Defendant Faber failed to serve its initial disclosures and ceased contact with Plaintiff after a July 15, 2025 email regarding a telephonic discovery conference. (ECF No. 53 at 1-2.) On July 30, 2025, the informal discovery conference was held, and Defendant Faber did not appear. (ECF No. 55.) After the informal discovery conference, the Court issued a discovery order directing Defendant Faber to provide initial disclosures to Plaintiff within 21 days of the order (on or by August 20, 2025). *Id.* The Court further warned that a failure to do so would lead to sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence, and recommendations to enter default judgment…" *Id.* On October 21, 2025, Plaintiff filed a joint mid-discovery statement, indicating that Defendant Faber failed to comply with the Court's July 30, 2025 order to provide initial disclosures. (ECF No. 57 at 2.)

On October 31, 2025, Plaintiff filed a motion to strike Defendant Faber's answer and enter default pursuant to Rule 37 of the Federal Rules of Civil Procedure. (ECF No. 59.) Defendant Faber did not file an opposition or respond to this motion. *See* Docket. On December 5, 2025, the Court vacated the hearing due to Defendant Faber's non-response, and provided Defendant Faber until December 18, 2025 to submit an opposition or statement of non-opposition. (ECF No. 60.) Defendant Faber never responded to the Court's order. *See* Docket. On March 13, 2026, the Court granted in part and denied in part Plaintiff's motion to strike Defendant Faber's answer and enter default. (ECF No. 61.) The Court ordered that Defendant Faber is precluded from presenting the witnesses, documents, and information that would have been contained in his initial disclosures to supply evidence on a motion, hearing, or trial. *Id*. at 7. The Court awarded Plaintiff its reasonable expenses in connection with preparing his motion for strike in the amount of $4,095, which Defendant Faber did not oppose. (ECF No. 65.)

On April 20, 2026, Plaintiff filed the instant partial motion for summary judgment against Defendant Faber. (ECF No. 63.) Because Defendant Faber did not file an

opposition or statement of non-opposition, the Court vacated the hearing and provided Defendant with another opportunity to file a response. (ECF No. 64.) Defendant Faber was ordered to file an opposition or statement of non-opposition no later than May 28, 2026. Defendant Faber did not, however, file an opposition or statement of non-opposition. *See* Docket. Pursuant to Local Rule 230(g), the Court submitted the motion on record and briefs on file.

## II. SUMMARY JUDGEMENT STANDARDS

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the mov[ing party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The principal purpose of summary judgment is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Therefore, the "threshold inquiry" is whether there are any factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the nonmoving party bears the burden of proof on an issue at trial, the moving party can meet its burden by showing or "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574. 585 (1986). To establish the existence of a genuine issue of material fact, the opposing party may not rely upon the allegations or denials of its pleadings, but must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact might affect the outcome of the suit and a reasonable jury could return a verdict for the opposing party. *See Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). For the moving party to succeed, the court must conclude that no rational trier of fact could find for the opposing party. *Matsushita*, 475 U.S. at 587.

All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). In addition, while a verified complaint may be considered as evidence at the summary judgment stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity," *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc), an unverified complaint cannot be considered as evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (citing *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423-24 (9th Cir. 1985)).

While a party's failure to respond to a motion for summary judgment does not allow a court to grant the motion by default, Federal Rule of Civil Procedure 56 allows courts to consider some facts as undisputed for purposes of the motion. *See Heinemann v. Satterberg*, 731 F. 3d 914, 919 (9th Cir. 2013); Fed. R. Civ. P. 56(e)(2).

/ / /

/ / /

/ / /

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment against Defendant Faber[2] on the following claims: breach of implied warranty of merchantability (second claim), breach of implied warranty of fitness for a particular purpose (third claim), and breach of implied covenant of good faith and fair dealing (seventh claim). Pl. MSJ at 5-7 (ECF No. 63).

### A. Undisputed Facts

Pursuant to Rule 56(e)(2), the Court considers the following facts as undisputed for purposes of the motion where Defendant did not respond to or oppose Plaintiff's motion. *See Heinemann*, 731 F. 3d at 919; Fed. R. Civ. P. 56(e)(2).

1. Plaintiff Loomis Basin is a full-service hospital and surgery center for horses and also includes an Equine Boarding Facility.

2. Loomis Basin intended to purchase a large incinerator and provide large animal cremation services to its clients. Cremation services would bring comfort to Loomis Basin's clients and profit to Loomis Basin.

3. In 2018, Defendants SANIFLAME and ROB FABER solicited Loomis Basin to purchase an animal cremation device manufactured by SaniFlame (hereinafter, "the Unit").

4. Defendant Faber, SaniFlame's authorized representative and part owner, represented SaniFlame to Plaintiff as a top-quality incinerator manufacturer that offers animal incinerators and eco waste solutions. Defendants promised that incinerators manufactured by SaniFlame entailed "low-cost ownership and low-cost operation." "Easy to operate" with "no maintenance." Defendants warranted that the Unit sold to Plaintiff would cremate well over 300 equine animals a year and expel no smoke or smell from the Unit. Defendants claimed a similar cremation unit they manufactured for the University of Manitoba, 3 to 4 years prior, continued to work "perfectly.".

---

[2] The district court previously found that it had personal jurisdiction over Defendant Faber. 5/16/2022 Order at 15-16 (ECF No. 23). Since the district court's initial ruling on personal jurisdiction, no further evidence has been submitted to challenge, reconsider, or warrant revisiting the district court's ruling.

5. Relying on the representations by Defendants about the reliability and suitability of the Unit, Loomis Basin agreed to purchase the Unit and began modifying its premises to accommodate the Unit. Loomis Basin incurred costs as a result of these modifications.

6. Defendant Faber travelled to Plaintiff's property in Loomis, California on or about May 6, 2019 and discussed the unit with [Plaintiff[]. The discussion included the Unit's specifications, suitability for the intended use of large animal cremation, and the infrastructure needed at the installation site on Plaintiff's property. Defendant Rob Faber represented that the Unit would be easy to operate and would cremate horses without expelling odors. The Unit was specifically designed so that: Dead stock animals are loaded into the primary chamber. The electric rail car moves the car in place. The unit is locked by an on board computer. It starts the process gasses are ignited, then gases pass through the connection breeches into the Secondary Chamber. The Secondary Chamber burns off these waste gasses into clean, odor-free waste exhaust..

7. Loomis Basin entered into a sales agreement ("Agreement") with SaniFlame through its authorized representative Rob Faber on June 16, 2019, to purchase the Unit for $419,000 (Canadian dollars). Consistent with the Agreement, Loomis Basin paid a 40% deposit to Defendants. Loomis Basin made several subsequent payments to Defendants consistent with the contract. Loomis Basin paid $377,100.00 (Canadian dollars) or $292,188.56 in US Dollars to Defendants reflecting 90 percent of the contract price.

8. In exchange for payments made by Loomis Basin, Defendants agreed to deliver and install a permitted and operational Equine Cremation Unit. Pursuant to the agreement the Unit would have "Removable cars," "Innovative afterburner design," "Continuous oxygen monitoring," and "Regenerative heat recovery." The June 16, 2019 Agreement between Plaintiff and Defendants promised delivery in approximately 14-16 weeks (September 23, 2019-October 7, 2019). Defendants were informed and knew that Loomis Basin required delivery and installation of the Unit to occur in 2019.

9. In preparation for the installation of the Unit, Loomis Basin spent money on infrastructure to support the Unit as directed by Defendants, to include, but not limited to, modifying a structure to house the Unit, installing fuel and electrical lines, and organizing tradesmen.

10. After a delayed delivery, startup of the Unit revealed it to be nonoperational. Defendants provided Loomis Basin instruction on remedying the defects and bringing the Unit to operational status. Loomis Basin incurred numerous and substantial expenses in an effort to make the Unit operational.

11. Over the next several months, Loomis Basin sought assistance from Defendants on numerous occasions to identify and repair defects in an effort to make the Unit operational. Problems hindering the Unit from becoming operational, communicated to Defendants by Loomis Basin included, but not are limited to: intermittent shutdown of the Unit during cremation cycle; leakage of fluids from carcasses in the cremation car; incomplete burning of carcasses; odors from partially burned carcasses when the Unit shut down and would not restart; the carcass car from not lifting into the Unit; the carcass car not remining in the proper raised position in the primary chamber; the Unit's alarms triggering and stopping the cremation cycle; intermittent shut off of burners during a cycle; strong vibration from fan motors, and failure of hydraulics. Multiple repairs attempted by Defendants and by Loomis Basin at Defendants' direction failed to make the unit operational.

12. Every day the Unit remained nonoperational resulted in lost revenue for Loomis Basin. Loomis Basin incurred the expense of hauling carcasses from its premises because the Unit was nonoperational.

13. Multiple repairs attempted by Defendants and by Plaintiff at Defendants' direction failed to make the Unit operational.

14. Defendant Faber knew the Unit was not reparable.

15. The Unit never worked properly.

16. The Unit remains nonoperational.

17. Defendants never refunded any of Plaintiff's motion paid for the Unit.

18. SaniFlame continues to sell products.

(ECF No. 63-2.)

**B. Breach of Implied Warranty of Merchantability (Claim Two)**

Plaintiff argues that it is entitled to summary judgment on its breach of implied warranty of merchantability claim because the undisputed facts show that Defendant sold Plaintiff a nonoperational unit. *See* Pl. MSJ at 5-6 (ECF No. 63-1).

"The California Commercial Code implies a warranty of merchantability that goods '[a]re fit for ordinary purposes for which such goods are used.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting Cal. Com. Code § 2314(2)(c)); *see also Fox v. Home Depot, Inc.* 2024 WL 1652623, at *7 (C.D. Cal. 2024). To prove a breach of the implied warranty of merchantability, Plaintiff must prove the following:

> (a) at the time of the purchase, the defendant was in the business of selling the product, (b) the product was not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary purposes for which the product is used, or did not conform to the quality established by the parties' prior dealings or by usage of trade, (c) the plaintiff took reasonable steps to notify the defendant within a reasonable time that the product did not have the expected quality, (d) the plaintiff was harmed, and (e) the failure of the product to have the expected quality was a substantial factor in causing the plaintiff's harm.

*Andrade v. Pangborn Corp*., 2004 WL 248078, at *23 (N.D. Cal. Oct. 22, 2004) (citing Judicial Council of California Civil Jury Instructions ("CACI") No. 1231; Cal. Com. Code § 2314).

Plaintiff has established all the required elements for its breach of implied warranty of merchantability claim. First, when Plaintiff purchased the Unit, Defendant Faber was an authorized representative of SaniFlame and a part owner and was selling animal incinerators such as the Unit. UDF 4. The Unit was delivered to Plaintiff on December 24, 2019.[3] FAC ¶ 24; Answer ¶ 24 ("Defendant Rob Faber admits only that

---

[3] Though Plaintiff's summary judgment motion and Statement of Undisputed Facts fail

the unit was delivered on December 24, 2019."). Second, the Unit was not operational, and therefore not the same quality as those generally acceptable in the trade and not fit for the ordinary purposes for which the Unit is used. *See* UDF 10. Third, Plaintiff notified Defendant that the Unit was not operational within a reasonable time, and multiple efforts to repair the defects and get the Unit operational failed. *See* UDF 10, 11, 13; *see also* Answer ¶ 27 ("Defendant Rob Faber admits that Defendants attempted to assist Plaintiff with the Unit over the next several months."). The Unit never worked properly and remains nonoperational. UDF 15, 16. Fourth, Plaintiff was harmed because it spent money on infrastructure to support the Unit, including modifying a structure and installing fuel and electrical lines, incurred "numerous and substantial expenses" to try to make the Unit operational, and incurred expenses to haul "carcasses from its premises because the Unit was not operational." UDF 7, 9, 10, 12. Defendants never refunded any money to Plaintiff. UDF 17. Fifth, the failure of the Unit to work was a substantial factor in causing Plaintiff's harm. UDF 10-13, 15-17.

Therefore, there is no genuine dispute of material fact and Plaintiff is entitled to a judgment as a matter of law on its breach of implied warranty of merchantability claim. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587.

**C. Breach of Implied Warranty of Fitness for a Particular Purpose (Claim Three)**

Plaintiff argues that it is entitled to summary judgment on its breach of implied warranty for fitness for a particular purpose claim because the undisputed facts established that Plaintiff relied on Defendant's expertise in the sale of the Unit. Pl. MSJ at 6-7.

To prove a breach of an implied warranty for fitness for a particular purpose claim, Plaintiff must prove the following: (1) plaintiff bought a product from defendant; (2) at the

---

to include the delivery date of the Unit, the First Amended Complaint's allegation regarding the delivery date was admitted by Defendant Faber in the Answer and is therefore deemed undisputed. *See* FAC ¶ 24; Answer ¶ 24.

time of purchase, defendant knew or had a reason to know that plaintiff intended to use the product for a particular purpose; (3) at the time of purchase, defendant knew or had reason to know that plaintiff was relying on defendant's skill and judgment to furnish a product that was suitable for that particular purpose; (4) plaintiff justifiably relied on defendant's skill and judgment; (5) the product was not suitable for the particular purpose; (6) plaintiff took reasonable steps to notify defendant within a reasonable time that the product was not suitable; (7) plaintiff was harmed; and (8) that the failure of the product to be suitable was the cause of the plaintiff's harm. *See* CACI 1232; Cal. Comm. Code 2315; *Keith v. Buchanan*, 173 Cal. App. 3d 13, 24-25 (1985); *Andrade*, 2004 WL 2480708, at *24; *Gunner Concrete*, *Inc. v. ProAll Int'l Mfg., Inc.*, 798 F. Supp. 3d 1165,1180 (C.D. Cal. 2025).

An implied warranty for fitness applies when goods are used for a particular purpose, which is different from the ordinary purpose for which the goods are used. *See T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 877 (N.D. Cal. 2015); *Odell v. Frueh*, 146 Cal. App. 2d 504, 509 (1956). The following summary of the implied warranty of fitness requirement of a particular purpose is instructive:

> "A particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1295 n.2, 44 Cal.Rptr.2d 526 (1995) (internal quotation marks omitted). "To state a claim for breach of the implied warranty of particular purpose, the plaintiff must identify a particular purpose for which he obtained the product at issue." *Frenzel*, 76 F. Supp. 3d at 1021, 2014 WL 7387150, at *16 (citations omitted); *see, e.g., id.* (dismissing plaintiff's breach of implied warranty of particular purpose claim where the complaint only alleged that the plaintiff intended to use the product for its ordinary use); *Smith*, 2014 WL 989742, at *8 ("[P]laintiff has identified no particular purpose for which she purchased the washing machine. She purchased it to wash her laundry, which is the ordinary purpose of a washing machine." (internal quotation marks omitted); *Kent v. Hewlett–Packard*

> *Co.*, No. 09–cv–05341–JF, 2010 WL 2681767, at *5 (N.D. Cal. July 6, 2010) ("Plaintiffs have not alleged that they used the computers ... for anything other than their ordinary purpose. Thus, plaintiffs have not stated a claim for breach of an implied warranty for a particular purpose.").

*T & M Solar & Air Conditioning*, 83 F. Supp. 3d at 877.[4]

Here, Plaintiff concedes that it intended to purchase a large incinerator for animal cremation services, purchased such a product from SaniFlame (the Unit), and intended to use the Unit for its ordinary purpose. UDF 2-4. Plaintiff does not argue or present evidence that it intended to use the Unit for anything other than the Unit's ordinary purposes—cremation of animals. *See* Pl. MSJ. Plaintiff fails to prove that it intended to use the Unit for a particular purpose, rather than its ordinary purpose. Because Plaintiff fails to prove this threshold element, the Court need not reach the remaining elements of this claim. Therefore, summary judgment on Plaintiff's breach of an implied warranty for fitness for a particular purpose claim should be denied. *See T & M Solar & Air Conditioning*, 83 F. Supp. 3d at 877; *Kamerik v. Depuy Orthopedics, Inc.*, 2013 WL 13222041, at *7 (C. D. Cal. Jan 28, 2013).

**D. Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim Seven)**

Plaintiff argues that it is entitled to summary judgment on its breach of the implied covenant of good faith and fair dealing claim because the undisputed facts reveal that Plaintiff and Defendant entered into a contract, Plaintiff performed its contractual obligations, and Defendant failed to perform his contractual obligations when the time arose. Pl. MSJ at 7.

A claim for a breach of the implied covenant of good faith and fair dealing requires a plaintiff to prove "(1) the parties entered a contract; (2) the plaintiff fulfilled his

---

[4] In other words, when a product does not work for its ordinary purpose, the implied warranty of merchantability applies; when a product does not work for its <u>particular</u> purpose, the implied warranty of fitness applies. As described above, Plaintiff has separately brought an implied warranty of merchantability claim.

obligations under the contract (3) any conditions precedent to defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Linde, LLC v. Valley Protein, LLC*, 2019 WL 3035551 at *9 (E.D. Cal. July 11, 2019) (quoting *Yahoo! Inc. Customer Data Sec. Breach Litg.*, 2017 WL 3727318, at *48 (N.D. Cal. Aug. 30, 2017)). "A plaintiff must show 'that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities.'" *Mechanical Marketing, Inc. v. Sixxon Precision Machinery Co., Ltd., Taiwan*, 2013 WL 2146585, at *5 (N.D. Cal. May 15, 2013) (quoting *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)) (granting summary judgment in favor of defendant where there was no concrete evidence defendant's direct communication with customers breached the express terms of a contract prohibiting diversion of customers).

While Plaintiff may very well be able to prove this claim at trial, it has failed to do so on its current motion for summary judgment. Though Plaintiff has established that the parties entered into a contract (UDF 7), Plaintiff has not proven that it fulfilled its obligations under the contract and that "any conditions precedent to defendant's performance occurred." Plaintiff also fails to meet its burden where it does not identify what the conditions precedent were and whether those conditions occurred. *See* Pl. MSJ; *Withers v. eHarmony, Inc.,* 2011 WL 8156007, at *4-5 (C.D. Cal. Mar. 4, 2011) (granting defendant summary judgment where plaintiff did not state what express terms and conditions were connected to his claim for breach of implied covenant of good faith and fair dealing and the court could not ascertain an implied promise). Instead, Plaintiff's summary judgment motion repeats the elements in a conclusory fashion without explaining how the undisputed facts cited actually prove that it fulfilled its obligations under the contract and that "any conditions precedent to defendant's performance occurred." *See* Pl. MSJ at 7. It is not this Court's job to identify what Plaintiff's obligations were under the Agreement, what the conditions precedent to Defendants' performance

were, and whether those conditions occurred. For example, Plaintiff has established that it paid 90% of the contract price (UDF 7), but not whether this fulfilled all of its obligations under the contract where the Agreement also appears to indicate payment of the remaining 10%, and whether the Agreement required any conditions precedent. *See* Pl. MSJ at 7; Fielding Decl., Exh. A at 15. Therefore, Plaintiff is not entitled to summary judgment on its breach of the implied covenant of good faith and fair dealing claim.

## IV. CONCLUSION

In conclusion, based upon the findings above, it is RECOMMENDED that Plaintiff's motion for summary judgment (ECF No. 63) be GRANTED IN PART and DENIED IN PART. Plaintiff should be granted summary judgment on its breach of implied warranty of merchantability claim (claim two) and denied summary judgment on its breach of implied warranty for fitness claim (claim three) and breach of the implied covenant of good faith and fair dealing claim (claim seven).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: August 21, 2026

Chi Soo Kim

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, loom.1404.21.msj